**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| R.W., | : | Civil No. 08-4841 (PGS) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BERNARD GOODWIN, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**APPEARANCES:**

> MICHAEL J. HAHN
> LOWENSTEIN SANDLER PC
> 65 Livingston Avenue
> Roseland, New Jersey 07068
> Attorneys for Petitioner

**SHERIDAN, District Judge**

RMW[1] filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a), a Memorandum of Law, a declaration, and several exhibits, challenging an order entered by the Superior Court of New Jersey, Law Division, Essex County, on February 5, 2007, civilly committing him as a sexually violent predator ("SVP") and seeking release. For the reasons expressed below, this Court will dismiss the Petition for lack of jurisdiction under § 2254, without prejudice to any right Petitioner may have to assert his claim in a properly filed civil complaint under 42 U.S.C. § 1983, and deny a certificate of appealability.

---

[1] The Petition refers to Petitioner as "R.W." but the state court record refers to him as "R.M.W." This Court will refer to Petitioner as "RMW" or Petitioner.

## I.  BACKGROUND

The following facts are taken from the Petition, attached documents, and relevant state court decisions.  Sometime in January 2002, the Attorney General of New Jersey filed a petition for civil commitment of RMW under the New Jersey Sexually Violent Predator Act ("SVPA"), N.J. STAT. ANN. § 30:4-27.24, et seq.[2]  After conducting an evidentiary hearing, on May 3, 2002, the Superior Court of New Jersey, Law Division, Essex County, entered an order civilly committing Petitioner to the Special Treatment Unit, a secure facility designated for the custody, care and treatment of sexually violent predators ("SVP") under the SVPA.  RMW appealed, and on November 29, 2004, the Appellate Division of the Superior Court of New Jersey affirmed the order of civil commitment.   See In re Civil Commitment of R.M.W., Docket No. A-6243-01 slip op. (N.J. Super., App. Div., Nov. 29, 2004).  In the opinion, the Appellate Court observed that Petitioner had 18 convictions, three of which related to sexual conduct, i.e., a 1978 conviction for lewdness and atrocious assault and battery, a 1988 conviction for second-degree assault by force or coercion, and a 1995 conviction for criminal restraint of a woman whom he held while exposing himself.  See Id.; see also In re Civil Commitment of R.M.W., Docket No. A-4419-06T2 slip op., pp. 2-3 (N.J. Super., App. Div., Nov. 15, 2007) (citing pp. 3-5 of slip op. in Docket No. A-6243-01).

---

[2] The SVPA, enacted in 1998 and effective August 12, 1999, permits the involuntary civil commitment of a "sexually violent predator" to a separate and secure facility for control, care and treatment.  N.J. STAT. ANN. § 30:4-27.24, et seq.  A "sexually violent predator" is defined as "a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment."  N.J. STAT. ANN. 30:4-27.26.

After conducting the annual review required by N.J. STAT. ANN. § 30:4-27.35, a Law Division Judge entered an order on January 11, 2006, continuing RMW's civil commitment under the SVPA until October 30, 2006.  See In re Civil Commitment of R.M.W., 2006 WL 3475509 (N.J. Super., App. Div., Dec. 4, 2006).  Observing that both Petitioner's expert and the state's expert acknowledged that "R.M.W.'s involvement in treatment at the STU and understanding of his cycle of offending were minimal," id. at *2, the Appellate Division affirmed the Law Division's determination "that it remained highly likely that R.M.W. would commit another sexually violent offense if released from the STU due to a personality disorder that caused him serious difficulty in controlling that behavior." Id.

After the next annual review required by N.J. STAT. ANN. § 30:4-27.35, on February 5, 2007, the Law Division continued RMW's civil commitment and scheduled a review for January 21, 2008.[3]  Petitioner appealed, arguing that the evidence was inadequate to support his commitment; the court erred in denying his motions for a jury trial and a N.J.R.E. 104(a) hearing concerning the scientific reliability of the state's expert opinions; the burden of proof should have been beyond a reasonable doubt (rather than clear and convincing evidence); the commitment violates the Ex Post Facto Clause; and hearsay was impermissibly utilized as substantive evidence. In re R.M.W., Docket No. A-4419-06T2 slip op., pp. 2, 3.  The Appellate Division rejected Petitioner's arguments:

> The State presented testimony from Doctors Gilman and Carlson. Dr. Gilman opined the R.M.W. continues to be at high risk to sexually reoffend.  The doctor noted that he "takes no

---

[3] Petitioner's submissions do not provide information regarding review hearings subsequent to February 5, 2007, but Petitioner presumably continues to be civilly committed as a SVP.

responsibility for his actions, does not acknowledge his role in his sexual offending, and has made little effort to partake of treatment as a method to decrease his sexually reoffending risk." The doctor specifically testified that R.M.W. shows no empathy or remorse and that his history, together with his lack of treatment, results in an evaluation that he is still at high risk. The doctor came to that conclusion even after factoring in R.M.W.'s age and present physical condition. The doctor concluded that those factors did not reduce the risk in any substantial fashion. Dr. Carlson also concurred with this assessment.

The trial court certainly had sufficient credible evidence presented to it to conclude that the State had established by clear and convincing proof that R.M.W. continues to be a sexually violent predator and that all of the criteria of the statute had been met. The court correctly focused on the long anti-social history of R.M.W.; the violent sexual acts perpetrated by R.M.W.; his alcohol abuse, which exacerbates his anti-social behavior; his failure to participate in any treatment for an extended period of time; and his recent behavior where he attended group and exposed himself to a female facilitator. Judge Perretti's determinations are well supported by the record. Therefore, we affirm.

Id. at pp. 5-6. On April 3, 2008, the New Jersey Supreme Court denied certification. See In re Civil Commitment of R.M.W., 195 N.J. 418 (2008) (table).

Through counsel, RMW filed the Petition presently before this Court on September 29, 2008, together with a motion to seal and identify Petitioner by his initials. By Order entered October 16, 2008, this Court granted the motion. The Petition challenges the February 5, 2007, order of civil commitment and seeks release on one ground, which is set forth below verbatim:

Ground One:  PETITIONER'S CIVIL COMMITMENT DEPRIVES HIM OF SUBSTANTIVE DUE PROCESS RIGHTS.

Supporting FACTS: Since 2007, Petitioner has been denied treatment at the STU because he is confined to a wheelchair due to knee surgery and takes medication which causes him to relieve his bladder frequently. Even prior to surgery, Petitioner received inadequate treatment, averaging two to three hours per week,

4

> which was further inhibited by the fact that therapists at the STU
> fail to keep what transpires during treatment sessions confidential.
> In violation of the Fourteenth Amendment, Petitioner is not
> administered treatment that reasonably relates to the purpose of his
> confinement or meets professional standards, and he is therefore
> denied a realistic opportunity of being cured and released from the
> STU.

(Pet., ¶ 12.A; Docket entry #1, p. 3.)

Petitioner seeks a Writ of Habeas Corpus releasing him from confinement as a SVP.

(Mem. of Law, p. 24.)

## II. STANDARD OF REVIEW

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). Habeas Rule 2(c) requires a § 2254 petition to "specify all the grounds for relief available to the petitioner," "state the facts supporting each ground," "state the relief requested," be printed, typewritten, or legibly handwritten, and be signed under penalty of perjury. 28 U.S.C. § 2254 Rule 2(c).

Habeas Rule 4 requires a judge to sua sponte dismiss a § 2254 petition without ordering a responsive pleading "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." 28 U.S.C. § 2254 Rule 4. Thus, "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland, 512 U.S. at 856. Dismissal without the filing of an answer or the State court record has been found warranted when "it appears on the face of the petition that petitioner is not entitled to relief." Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989); see also McFarland, 512 U.S. at 856; United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (habeas petition may be dismissed where "none of the grounds alleged in the

5

petition would entitle [the petitioner] to [habeas] relief"). The Supreme Court explained the

pleading requirements under the Habeas Rules as follows:

> Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide fair notice of what the plaintiff's claim is, and the grounds upon which it rests. Habeas Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." See also Advisory Committee's note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)) . . . .
>
> A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted." § 2243. Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in district court," the court must summarily dismiss the petition without ordering a responsive pleading. If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5(b).

Mayle v. Felix, 545 U.S. 644, 655 (2005) (citations and internal quotation marks omitted).

## III. DISCUSSION

A. Jurisdiction

Lack of jurisdiction may be raised by the Court sua sponte at any time. See Bender v.

Williamsport Area School Dist., 475 U.S. 534, 541 (1986); Louisville & Nashville Railroad Co.

v. Mottley, 211 U.S. 149, 152 (1908); Van Holt v. Liberty Mutual Fire Ins. Co., 163 F.3d 161,

166 (3d Cir. 1998). Section 2254(a) of Title 28 of the United States Code gives a district court

jurisdiction to entertain a habeas petition brought by a person in state custody on the ground that the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

Federal law provides two avenues of relief to detained persons: a petition for habeas corpus and a civil rights complaint. See Muhammad v. Close, 540 U.S. 749, 750 (2004). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . [and] requests for relief turning on circumstances of confinement may be presented in a § 1983 action." Id. As the Supreme Court emphasized in Wilkinson v. Dotson, 544 U.S. 74, 81 (2005), habeas relief is available only when prisoners "seek to invalidate the duration of their confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." See Wilkinson, 544 U.S. at 81.

In this case, Petitioner seeks release from confinement on one ground, i.e., his detention violates his Fourteenth Amendment right to substantive due process because he is being denied treatment (which he needs in order to gain release under the SVPA). In his memorandum of law, Petitioner maintains that this Court has jurisdiction to entertain his claim under 28 U.S.C. § 2254 because the Third Circuit has not ruled that habeas jurisdiction and § 1983 jurisdiction are "mutually exclusive." (Mem. of Law; Docket entry #1-2, p. 13, n.2.) Relying on one case, Widel v. Hadi, 2007 WL 4218948 (M.D. Fl. Nov. 28, 2007), Petitioner argues that "the Court has

jurisdiction to hear R.W.'s habeas petition because he seeks release from the STU as a result of the State's failure to provide him with adequate treatment and a meaningful opportunity to be released in violation of the Due Process Clause of the Fourteenth Amendment." (Id.; Docket entry #1-2, p. 12.) This Court is not persuaded by Petitioner's jurisdictional analysis.

First, the Widel case is distinguishable because the petitioner in that case challenged his detention on the ground that the Florida statute (Ryce Act) authorizing his commitment was facially unconstitutional. Unlike Widel, RMW is not raising a facial challenge to the constitutionality of the SVPA. In Widel, petitioner filed a § 2254 petition challenging his civil commitment as a SVP by the State of Florida, raising two grounds: (1) "his commitment under the Ryce Act is unconstitutional because the Act fails to set standards for the care of sexually violent predators;" and (2) his commitment is unconstitutional because the jury was not instructed at his commitment trial concerning the appropriateness of less restrictive alternatives to commitment. Widel at *2. The court rejected the State's argument that it had no jurisdiction under § 2254, not because failure-to-treat warranted release, but because Widel claimed that the Ryce Act was facially unconstitutional, and if the Act was facially unconstitutional, then Widel's detention pursuant to the Act was also unconstitutional:

> Petitioner's theory is that the Ryce Act is facially unconstitutional
> as a whole and cannot provide a basis for his confinement . . . . If
> the Court found that the Ryce Act is facially unconstitutional,
> release would be among the appropriate remedies.

Id. at *4.

This Court has no disagreement with the reasoning in <u>Widel</u> regarding habeas jurisdiction. Rather, because RMW is not raising a facial challenge to the constitutionality of New Jersey's SVPA, <u>Widel</u> is simply inapplicable.

Second, Petitioner's jurisdictional argument is based on the conflation of two distinct liberty interests, <u>i.e.</u>, (1) the liberty interest in being free from confinement and (2) the claimed liberty interest in receiving treatment during confinement. Whereas a meritorious claim for violation of the former warrants release and is properly brought under § 2254, a meritorious claim asserting violation of the latter raises a conditions-of-confinement challenge that is not cognizable under § 2254 and is properly brought under § 1983.

Petitioner correctly contends that "[d]ue process requires that the conditions and duration of confinement under the [SVP] Act bear some reasonable relation to the purpose for which persons are committed." <u>Seling v. Young</u>, 531 U.S. 250, 265 (2001) (citing <u>Foucha v. Louisiana</u>, 504 U.S. 71, 79 (1992)). Applying this principle, in <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982) (a civil rights case under § 1983), the Supreme Court determined that a civilly committed mentally retarded person has a protected liberty interest in "conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions and such training as may be required by these interests [because] such conditions of confinement would comport fully with the purpose of respondent's commitment." <u>Id.</u> at 324. Significantly, the available remedy for past violation of that right was damages (not release). <u>See also Hydrick v. Hunter</u>, 500 F. 3d 978 (9th Cir. 2007) (class action lawsuit under § 1983 by civilly committed sexually violent predators challenging conditions of confinement); <u>Leamer v. Fauver</u>, 288 F. 3d 532 (3d Cir. 2002) (where state statute predicates the term of prisoner's criminal sentence on his response to treatment for sexual

9

aberration, prisoner has a liberty interest in treatment that may only be raised under § 1983);

(Sharp v. Weston, 233 F. 3d 1166, 1172 (9th Cir. 2000) (civil rights action wherein court held

that "the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed

persons with access to mental health treatment that gives them a realistic opportunity to be cured

and released").

To be sure, a person has a liberty interest in freedom from physical confinement, but this

interest is distinct from the liberty interest in receiving treatment during confinement.  In Kansas

v. Hendricks, 521 U.S. 346 (1997), the Supreme Court rejected the notion (adopted by the

Kansas Supreme Court) that violation of the liberty interest in being free from detention depends

on whether the state is providing treatment to a civilly committed sexually violent predator.  The

Kansas SVP Act authorized the civil commitment of a SVP "for control, care and treatment until

such time as the person's mental abnormality or personality disorder has so changed that the

person is safe to be at large [and] required that the involuntary detention or commitment . . . shall

conform to constitutional requirements for care and treatment."  Hendricks, 521 U.S. at 353

(quoting various Kansas statutes).  In upholding the Act against a facial constitutional challenge,

the Supreme Court observed that a person's constitutionally protected interest in avoiding

physical confinement may be overridden in the civil context where the state has "coupled proof

of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental

abnormality.'"  Id. at 358.

> These added statutory requirements serve to limit involuntary civil
> confinement to those who suffer from a volitional impairment
> rendering them dangerous beyond their control.  The Kansas Act is
> plainly of a kind with these other civil commitment statutes: It
> requires a finding of future dangerousness, and then links that

10

> finding to the existence of a "mental abnormality" or "personality
> disorder" that makes it difficult, if not impossible, for the person to
> control his behavior.  The precommitment requirement of a
> "mental abnormality" or "personality disorder" is consistent with
> the requirements of these other statutes that we have upheld in that
> it narrows the class of persons eligible for confinement to those
> who are unable to control their dangerousness . . . . .
>
> This admitted lack of volitional control, coupled with a prediction
> of future dangerousness, adequately distinguishes Hendricks from
> other dangerous persons who are perhaps more properly dealt with
> exclusively through criminal proceedings.  Hendricks' diagnosis as
> a pedophile, which qualifies as a "mental abnormality" under the
> Act, thus plainly suffices for due process purposes.

Id. at 358, 360 (citation omitted).

Notably, the Supreme Court held that the Act did not violate substantive due process,

even though the Kansas Supreme Court had found that Hendricks was not receiving any

treatment and that treatment was not even a primary purpose of the Act.  The Supreme Court

opined:

> It is possible to read [the opinion of the Kansas Supreme Court] as
> a determination that Hendricks' condition was *untreatable* under
> the existing Kansas civil commitment statute, and thus the Act's
> sole purpose was incapacitation.  Absent a treatable mental illness,
> the Kansas court concluded, Hendricks could not be detained
> against his will.
>
> Accepting the Kansas court's apparent determination that treatment
> is not possible for this category of individuals does not obligate us
> to adopt its legal conclusions.  We have already observed that,
> under the appropriate circumstances and when accompanied by
> proper procedures, incapacitation may be a legitimate end of the
> civil law . . . .  While we have upheld state civil commitment
> statutes that aim both to incapacitate and to treat . . . , we have
> never held that the Constitution prevents a State from civilly
> detaining those for whom no treatment is available, but who
> nevertheless pose a danger to others . . . .  Similarly, it would be of
> little value to require treatment as a precondition for civil

11

confinement of the dangerously insane when no acceptable
treatment existed.  To conclude otherwise would obligate a State to
release certain confined individuals who were both mentally ill and
dangerous simply because they could not be successfully treated
for their afflictions.  Cf. Greenwood v. United States, 350 U.S.
366, 375 . . . (1956) ("The fact that at present there may be little
likelihood of recovery does not defeat federal power to make this
initial commitment of the petitioner") . . . .

Alternatively, the Kansas Supreme Court's opinion can be read to
conclude that Hendricks' condition is treatable, but that treatment
was not the State's "overriding concern," and that no treatment was
being provided . . . .  Indeed, critical language in the Act itself
demonstrates that the Secretary, under whose custody sexually
violent predators are committed, has an obligation to provide
treatment to individuals like Hendricks . . .  Even if we accept this
determination that the provision of treatment was not the Kansas
Legislature's "overriding" or "primary" purpose in passing the Act,
this does not . . . require us to conclude that the act is
[unconstitutional].

Hendricks, 521 U.S. at 365-67 (citations and internal quotation marks omitted).

Thus, under Hendricks, a state may constitutionally deprive a person of freedom from

detention so long as it establishes dangerousness and a mental abnormality that makes it difficult

for the person to control his dangerous behavior, regardless of whether or not the State is

providing treatment.  See Hendricks, 521 U.S. at 358, 360.  Under Hendricks, even if this Court

were to rule in Petitioner's favor and find that New Jersey had deprived him of substantive due

process by failing to provide treatment, such a ruling would not affect the fact or duration of

Petitioner's detention or permit his release.

Third, contrary to RMW's contention (Docket entry #1-2, p. 13, n. 2), the Third Circuit

has determined that a failure-to-treat claim presents a conditions-of-confinement challenge which

is not cognizable in habeas and may only be brought under § 1983.  See Leamer v. Fauver, 288 F.

12

3d 532 (3d Cir. 2002). In <u>Leamer v. Fauver</u>, Charles Leamer, a prisoner sentenced to an indeterminate term of up to 42 years at the Adult Diagnostic and Treatment Center for rape and assault with intent to rape, brought a § 1983 complaint claiming that he was being denied his due process right to treatment by being placed on restricted activity program status. "Under the terms of [Leamer's] sentence, he was to receive specialized treatment for his mental and physical aberrations and be released only when he is capable of making an acceptable social adjustment in the community." <u>Id.</u> at 535. This Court had dismissed Leamer's complaint on the ground that the exclusive remedy for his failure-to-treat claim was habeas corpus. The Third Circuit reversed, ruling that: (1) under the unique statutory sentencing scheme, where the term of the sentence depends on the prisoner's response to treatment, the total denial of treatment may violate substantive due process and impose cruel and unusual punishment; and (2) such a failure-to-treat claim could not have been brought under § 2254 and was exclusively cognizable under § 1983. In rejecting the state's argument that the exclusive remedy for Leamer's claims was a habeas petition, the Third Circuit explained the distinction between the habeas remedy and the civil rights remedy as follows:

> Although both § 1983 and habeas corpus allow prisoners to challenge unconstitutional conduct by state officers, the two are not coextensive either in purpose or effect. Habeas relief is clearly quite limited: The underlying purpose of proceedings under the Great Writ of habeas corpus has traditionally been to 'inquire into the legality of the detention, and the only judicial relief authorized was the discharge of the prisoner or his admission to bail, and that only if his detention were found to be unlawful . . . . Section 1983, in contrast, provides for liability on the part of any state actor who subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction, thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . . There is only a narrow subset of

13

> actions that arguably might properly be brought as either, that is,
> where the deprivation of rights is such that it necessarily impacts
> the fact or length of detention.

Leamer, 288 F.3d at 540 (citations and internal quotation marks omitted).

Most significantly, the Third Circuit expressly stated that "Leamer could not have brought this claim as a habeas claim." Leamer, 288 F. 3d at 542. The court explained:

> When examining whether Preiser and its progeny require a claim to
> be brought under habeas, unless the claim would fall within the
> "core of habeas" and require sooner release if resolved in the
> plaintiff's favor, a prison confinement action such as this is
> properly brought under § 1983. Leamer's claim not only does not
> fall within the core of habeas; it would not be properly brought
> under habeas at all. Conversely it was properly brought under §
> 1983.

Id. at p. 544; see also Long v. Parker, 390 F. 2d 816, 818 (3d Cir. 1968) ("Traditionally, the writ of habeas corpus has functioned to test the legality of confinement rather than the manner in which the detention is administered. Thus habeas corpus is not a proper proceeding to investigate complaints by prisoners of mistreatment since such complaints do not attack the legality of the confinement").

Although RMW asks this Court to release him, this request does not transform a conditions-of-confinement claim (which is cognizable under § 1983) into a habeas claim (which is cognizable under § 2254). Simply put, because release is not an available remedy for violation of RMW's claimed right-to-treatment, habeas corpus is not an available remedy and this Court must dismiss the Petition for lack of habeas jurisdiction.[4] See Dickerson v. Diguglielmo, 306

---

[4] As the procedures and the cost of litigating a § 1983 complaint differ significantly from those of a § 2254 petition (for example, the filing fee for a habeas petition is $5.00, and the filing fee of a civil complaint is $350.00), this Court will not recharacterize the pleading as a § 1983

(continued...)

14

Fed. App'x 707, 708 (3d Cir. 2009) (dismissal of habeas petition for lack of jurisdiction was

required where "appellants have sought habeas relief by asking for release from prison [but] there

is no connection between their claim of illegal confiscation of legal materials and the fact or

duration of their confinement, which is the essence of habeas"); Zapata v. United States, 264 Fed.

App'x 242 (3d Cir. 2008) (dismissal for lack of habeas jurisdiction is required  where inmate

challenges prison transfer); Ganim v. Federal Bureau of Prisons, 2007 WL 1539942 (3d Cir. May

29, 2007) (same); Beckley v. Miner, 125 Fed. App'x 385 (3d Cir. 2005), cert. denied, 546 U.S.

1153 (2006) (district court lacked habeas jurisdiction over challenge to failure to transfer

petitioner to prison offering drug treatment program because favorable judgment would not affect

fact or duration of confinement); Bronson v. Demming, 56 Fed. App'x 551, 553-54 (3d Cir.

2002) (habeas relief was unavailable to inmate seeking release from disciplinary segregation to

general population, and district court properly dismissed habeas petition without prejudice to any

right to assert claims in properly filed civil complaint, because "[n]o matter what the outcome of

Bronson's habeas petition, neither the fact nor the length of his incarceration will be affected");

Vaughn v. Pa. Dep't of Corrections, 2008 WL 4279610 (W.D. Pa. Sept. 16, 2008) (district court

lacks habeas jurisdiction over inmate's claim asserting denial of medical treatment because, if

successful, challenge would not have a necessary impact on fact or duration of confinement;

moreover, recharacterization of petition as civil complaint is improper).  The dismissal of the

Petition is without prejudice to any right Petitioner may have to assert his claim in a properly

filed § 1983 complaint. Id.

---

[4](...continued)
complaint.  Moreover, this Court makes no finding regarding the merits of Petitioner's asserted
right-to-treatment claim.

B. Certificate of Appealability

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In Slack v. McDaniel, 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

This Court denies a certificate of appealability in this case because jurists of reason would not find it debatable that dismissal of the Petition for lack of jurisdiction under 28 U.S.C. § 2254 is correct.

### III. CONCLUSION

Based on the foregoing, the Court dismisses the Petition without prejudice to any right Petitioner may have to assert his claims in a properly filed civil complaint and denies a certificate of appealability.

**PETER G. SHERIDAN, U.S.D.J.**

DATED: _____May 18_____, 2009

17